<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| NAN, INC., <br><br> Plaintiff, <br><br> v. <br><br> WOOD ENVIRONMENT & <br> INFRASTRUCTURE SOLUTIONS, INC., <br><br> Defendant. | Civil Action No. 21-707 (MAS) (DEA) <br><br> **MEMORANDUM OPINION** |

<u>**SHIPP, District Judge**</u>

This matter comes before the Court on Defendant Wood Environment & Infrastructure Solutions, Inc.'s ("Wood") Partial Motion to Dismiss Plaintiff Nan, Inc.'s ("Nan") Amended Complaint. (ECF No. 19.) Nan opposed (ECF No. 22), and Wood replied (ECF No. 23). The Court has carefully considered the parties' submissions and decides this matter without oral argument under Local Civil Rule 78.1. For the reasons below, the Court grants in-part and denies in-part Wood's Partial Motion to Dismiss.

**I.    BACKGROUND**

This dispute arises out of a construction project in the Marshall Islands commissioned by the U.S. Air Force. The U.S. Air Force selected Lockheed Martin to serve as the project's prime contractor, meaning it would manage the project and hire any necessary subcontractors. (*See* Am. Compl. ¶¶ 8-9.) Lockheed Martin hired Wood, an engineering firm, as one such subcontractor. (*Id.*

¶ 9.) Wood in turn hired another subcontractor, Nan, for "construction, labor, materials, equipment, and supervision" of the project. (*Id.* ¶ 12.)

As relevant here, Nan's Amended Complaint alleges that it entered into six contracts with Wood pertaining to Nan's work on the project. (*Id.* ¶ 17.) Under those contracts, the Amended Complaint alleges that Nan submitted to Wood fifty-two change orders, which are requests for various changes to the originally agreed-upon scope of work. (*See id.*) The Amended Complaint further alleges that at least some of the change orders resulted from delays caused by Wood or its agents. (*See id.* ¶¶ 25-30.) Further, Nan's Amended Complaint alleges that thirteen of the fifty-two change orders stemmed from monies Nan owed its subcontractor, Photonworks. (*Id.* ¶¶ 44-45; *see also id.* ¶ 16 (alleging that Photonworks has asserted claims against Nan's surety).) Rounding out the allegations, the Amended Complaint asserts that Wood never reimbursed Nan for these fifty-two change orders. (*See id.* ¶ 47; Def.'s Moving Br. 4-5, ECF No. 19-1 ("The change order requests seek money for alleged damages due to Project delays, extra costs associated with the construction, rental payments for equipment and containers, and monies allegedly owed to Nan for rest and relaxation." (citation omitted)).)

Based on Wood's alleged nonpayment, Nan sued in January 2021. Nan later filed an Amended Complaint, asserting four counts against Wood: (1) breach of contract (Count I), (2) breach of the covenant of good faith and fair dealing (Count II), (3) unjust enrichment (Count V), and (4) violation of the New Jersey Prompt Payment Act (the "Act," Count VI). (*See generally* Am. Compl.)[1] Wood moved to partially dismiss the Amended Complaint's breach-of-contract claim insofar as it asserts claims on behalf of non-party Photonworks, and to fully dismiss the remaining claims. (*See generally* Def.'s Mot. to Dismiss, ECF No. 19.)

---

[1] The Amended Complaint does not contain Count III or Count IV.

2

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2)[2] "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of the plaintiff's well-pleaded factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court, however, may ignore legal conclusions or factually unsupported accusations that merely state "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678). On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

---

[2] All references to a "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

3

## III.  DISCUSSION

Wood contends that the Court must dismiss Nan's claims. Specifically, Wood argues that Nan's breach-of-contract claim encompasses damages asserted by non-party Photonworks, with which Wood lacks privity of contract. (*See* Def.'s Moving Br. 7-9.) Wood further asserts that the Court should dismiss Nan's breach-of-covenant and unjust enrichment claims as duplicative of Nan's breach-of-contract claim. (*See id.* at 9-14.) Finally, Wood argues that Nan has not alleged the elements of a cause of action under the Act. (*See id.* at 14-15.) The Court addresses each of the Amended Complaint's causes of action in turn.

### A.  Count I: Breach of Contract

Turning first to Nan's breach-of-contract claim, at issue is whether the claim can include the thirteen change orders submitted by non-party Photonworks. Wood claims that Nan cannot seek these change orders as damages as a matter of law because no contract existed between Wood and Photonworks. (*See* Def.'s Moving Br. 7.) Nan counters that privity is irrelevant because it properly characterized the thirteen change orders as damages accruing to itself and resulting from Wood's breach. (*See* Pl.'s Opp'n Br. 3-6.) The Court begins by noting that the parties cite few cases addressing this precise issue, particularly in the realm of downstream contractors in a government project. The Court thus addresses each of the arguments raised by the parties.

To start, the Court agrees with Wood that breach-of-contract claims generally require privity of contract. A breach of contract claim under New Jersey law requires four elements: "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Cobra Enters. LLC v. All Phase Servs., Inc.*, No. 20-4750, 2020 WL 5407997, at *2 (D.N.J. Sept. 9, 2020) (citing *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007)). Here, Wood correctly notes that no contract exists between it and Photonworks. (*See* Def.'s Moving Br. 7.) Indeed, in response to this

Court's order that Nan produce "all contracts integral to its Amended Complaint" (ECF No. 24), Nan did not produce any contract between Wood and Photonworks (*see* Pl.'s Correspondence 1, ECF No. 26).[3] So, under a straightforward application of breach-of-contract elements, Nan's claim appears to fail.

That does not end the inquiry, however, as numerous courts have noted that exceptions to the privity requirement exist especially where a party would otherwise have no recourse. *See, e.g., Buckley & Co., Inc. v. State*, 356 A.2d 56, 73 (N.J. Super. Ct. Law Div. 1975) (listing cases where "the lack of privity between the subcontractor and the contractee is no bar to the action"). Nan suggests one such privity exception by invoking a doctrine developed by the Court of Federal Claims in *Severin v. United States*, 99 Ct. Cl. 435 (1943). There, a contractor sued the United States for money damages on behalf of itself and its subcontractor, both of which accrued from the United States's breach of contract. *Id.* at 442. The court ultimately held that the contractor could not sue the United States for damages on behalf of the contractor's subcontractor because the pair had contracted to exculpate each other if the government breached. *See id.* at 443-44. Critically, *Severin* involved a claim against the owner of the project, the United States, and subsequent cases invoking *Severin* arise in the context of a subcontractor suing a project owner. *See, e.g.*, 6 Bruner & O'Conner, Construction Law § 19:25 (2021) ("The *Severin* Doctrine addresses an issue sometimes raised in construction breach cases: whether contract damages sought by a nonbreaching contractor *from an owner* may include the unsettled claims of lower tier subcontractors and suppliers who are not in privy of contract." (emphasis added)). Further, the Court questions the applicability of the *Severin* doctrine in the context of private parties because

---

[3] The Court may consider documents extrinsic to the pleadings that are "*integral to or explicitly relied* upon in the complaint," without converting a motion to dismiss into a motion for summary judgment. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

the doctrine implicates the scope of the state's waiver of sovereign immunity. *See George Hyman Constr. Co. v. United States*, 30 Fed. Cl. 170, 173-74 (1993) (discussing interplay between *Severin* and waiver of sovereign immunity). To be sure, Nan does not point to any cases showing the general applicability of the *Severin* Doctrine to disputes solely between private contractors and subcontractors.

Wood also suggests that Nan is ineligible for another one of the privity exceptions, "pass-through claims." (*See* Def.'s Moving Br. 7-8.) "A pass-through claim is a claim (1) by a party who has suffered damages . . . ; (2) against a responsible party with whom it has no contract . . . ; and (3) presented through an intervening party (the contractor) who has a contractual relationship with both." *Interstate Contracting Corp. v. City of Dallas*, 135 S.W.3d 605, 610 (Tex. 2004). *See generally Sloan & Co. v. Liberty Mut. Ins. Co.*, 653 F.3d 175, 182-84 (3d Cir. 2011). Although the exception appears plausible, pass-through claims generally require a "liquidating agreement," whereby contracting parties agree to liquidate their claims by passing those claims through to a third party. *See Sloan*, 653 F.3d at 183; 3 Bruner & O'Conner, Construction Law § 8:51 (2021). If applied here, a subcontractor (Nan) would contract with its subsubcontractor (Photonworks) to liquidate the subsubcontractor's claims by passing those claims through to the contractor (Wood). But the Amended Complaint does not allege any facts showing a liquidating agreement between Nan and Photonworks. *See Barry, Bette & Led Duke Inc. v. State*, 240 A.D.2d 54, 57 (N.Y. App. Div. 1998) ("[L]iquidating agreements do not come into existence through inference."). In fact, the Court's own review of the contract reveals that, at least for disputes not involving actions or omissions by the owner (the U.S. Air Force), Nan and Photonworks agreed to arbitrate their claims. (*See* Pl.'s Correspondence Ex. 8, Subcontractors Agreement art. 35(a), ECF No. 26-8.).

So, without allegations of a proper liquidating agreement, can the Court allow Nan to pass-through Photonworks's claims? The Court concludes, as one New Jersey court put it, that "reason and equity" permit Nan to assert these claims. *See Buckley & Co., Inc.*, 356 A.2d at 73 (listing cases). Barring Nan from pursuing claims on behalf of Photonworks would work an injustice to Photonworks because Photonworks would be left without a remedy. In other words, if the Court construed this contract claim to mean that Nan could not collect as damages its monies owed to Photonworks, Photonworks could not seek redress because it could not sue Wood directly. *See id.* at 73 ("[I]f the contractor himself is barred from asserting those claims, the contractee would be in the extraordinary position of being responsible to no one regardless of the nature or extent of its liabilities under its contract.").[4] The Court thus adopts the rule that a subcontractor may sue a contractor for its damages, "whether [it] performed the work [it]self or sublet it to others." *Id.*; *see also United States v. Blair*, 321 U.S. 730, 737-38 (1944) (allowing contractor to assert subcontractor claims because of implied "right to recover extra costs and services . . . regardless of whether such costs were incurred or such services were performed personally or through a subcontractor"). The Court cautions, however, that it reaches this rule considering the limited factual record at this stage and taking all inferences in favor of Nan. Should, for example, Wood show through discovery that Nan was not liable to Photonworks, Nan's claim would likely fail. *See Buckley & Co., Inc.*, 356 A.2d at 74 (noting that "no recovery may be had" where "contractor is otherwise under no liability to the subcontractor"). All the Court can say for now is that Nan has plausibly alleged that it can maintain as damages its change orders from Photonworks.

---

[4] Photonworks could of course sue Nan for damages, but, under Wood's approach, Nan would not collect those damages from Wood—leaving Nan essentially judgment-proof from Photonworks.

7

B.  **Count II: Breach of the Implied Covenant of Good Faith and Fair Dealing**

The Court turns next to Plaintiff's claim for breach of the covenant of good faith and fair dealing. To assert a claim for breach of the implied covenant of good faith and fair dealing, a party "must allege that the accused acted in bad faith or engaged in 'some other form of inequitable conduct in the performance of a contractual obligation.'" *Intervet, Inc. v. Mileutis, Ltd.*, No. 15-1371, 2016 WL 740267, at *4 (D.N.J. Feb. 24, 2016) (quoting *Pactiv Corp. v. Perk-Up, Inc.*, No. 08-5072, 2009 WL 2568105, at *12 (D.N.J. Aug. 18, 2009)). Importantly, the bad-faith or inequitable conduct cannot be the same as the underlying breach of contract. *See Adler Eng'rs, Inc. v. Dranoff Props., Inc.*, No. 14-921, 2014 WL 5475189, at *11 (D.N.J. Oct. 29, 2014) ("[A] '[p]laintiff may not maintain a separate action for breach of the implied covenant of good faith and fair dealing [where] it would be duplicative of [its] breach of contract claim.'" (second, third, and fourth alterations in original) (quoting *Hahn v. OnBoard LLC*, No. 09-3639, 2009 WL 4508580, at *6 (D.N.J. Nov. 16, 2009)). Thus, to avoid dismissal, Nan's Amended Complaint must allege bad-faith or inequitable conduct carried out by Wood in its contractual performance—apart from Wood's alleged breach.

The Amended Complaint fails to meet this standard. Just like the breach-of-contract claim, the predicate of the breach-of-covenant claim is Wood's nonpayment of change orders. (*Compare* Am. Compl. ¶ 54 (alleging as part of breach-of-contract claim that "Wood has failed, or otherwise refused to remit payment, as required under the terms and conditions of the applicable contracts"), *with id.* ¶ 58 (alleging as part of breach-of-covenant claim that "Wood has failed to remit payment in full to Nan.").) Further, the Amended Complaint's conclusory allegations of bad faith do not persuade the Court otherwise. *See Intervet, Inc.*, 2016 WL 740267, at *5 ("[The plaintiff] cannot merely recite the same conduct it alleges for [the defendant's] breach of contract and transform such conduct into a breach of the implied duty of good faith and fair dealing by appending a

8

conclusory label that those actions breaching the contract were also done in bad faith."). The Amended Complaint conclusorily asserts, for example, that Wood "in bad faith, led Nan to believe it would be paid in full for the work it performed." (Am. Compl. ¶ 59.) The Court, however, refuses to engage in the mental gymnastics necessary to distinguish failing to pay under a contract from promising—and then later failing—to pay. In all events, these allegations do not rise to the level of actionable bad faith for breach-of-covenant claims. *See, e.g., Naik v. 7-Eleven, Inc.*, No. 13-4578, 2014 WL 3844792, at *12 (D.N.J. Aug. 5, 2014) (finding bad faith where the defendant created a hostile work environment and intimidated the plaintiff to surrender its franchises); *Bak-A-Lum Corp. of Am. v. Alcoa Bldg. Prods., Inc.*, 351 A.2d 349, 352 (N.J. 1976) (finding bad faith where the defendant encouraged the plaintiff to expand its facilities and incur additional costs while knowing it would terminate contract). The Court thus dismisses Nan's breach-of-covenant claim. *See Intervet, Inc.*, 2016 WL 740267, at *5 (dismissing breach-of-covenant claim where "all of [the] allegations of 'bad faith' relate to actions that . . . form the basis of [the] breach of contract [claim]").

### C.      Count V: Unjust Enrichment

Turning to Nan's unjust enrichment claim, the Court also dismisses this claim. At issue is whether Nan can maintain this claim alongside its breach-of-contract claim. The law of this Circuit is clear that "[a] claim of unjust enrichment will not stand when 'an express contract exists concerning the identical subject matter.'" *Spano v. JP Morgan Chase Bank, N.A.*, 521 F. App'x 66, 70 (3d Cir. 2013) (quoting *Suburban Transfer Serv., Inc. v. Beech Holdings, Inc.*, 716 F.2d 220, 226-27 (3d Cir. 1983)). To that end, at the motion-to-dismiss stage, "pleading both breach of contract and unjust enrichment is plausible only when the validity of the contract itself is actually disputed, making unjust enrichment a potentially available remedy." *Grudkowski v. Foremost Ins. Co.*, 556 F. App'x 165, 170 n.8 (3d Cir. 2014) (citations omitted). So, for Nan's unjust enrichment

9

claim to survive, its Amended Complaint must allege that it disputes the underlying validity of the six contracts between it and Wood.

Nan's Amended Complaint does not so allege. Like its breach-of-covenant claim, the Amended Complaint's unjust enrichment claim duplicates the breach-of-contract claim. (*Compare* Am. Compl. ¶ 71 (alleging as part of unjust enrichment claim that "Wood has received the benefit of the services and materials provided by Nan without being required to pay the reasonable value thereof"), *with id.* ¶ 54 (alleging as part of breach-of-contract claim that "Wood has failed, or otherwise refused to remit payment, as required under the terms and conditions of the applicable contracts").) Nor does the Amended Complaint dispute the underlying validity of the six contracts. To the contrary, it alleges that the change orders for the cost overruns were contractually permitted. (*See, e.g.*, Am. Compl. ¶ 24 (alleging change order request for extra costs and that "[t]hese costs are permitted by the Contract"); ¶ 53 (alleging as part of breach-of-contract claim that "Nan has submitted invoices and change orders for the services it has performed associated with the Project").) Indeed, those allegations align with the Court's own review of the contracts. (*See, e.g.*, Pl.'s Correspondence Ex. 2, Federal Construction Subcontract Agreement §§ 23, 25 (authorizing "changes in services" and "changes in agreement amount").) Without allegations in the Amended Complaint asserting that these contract provisions are invalid, the Court dismisses Nan's unjust enrichment claim.

**D.   Count VI: New Jersey Prompt Payment Act**

Nan's final cause of action concerns subsection (b) of the Act, N.J. Stat. Ann. § 2A:30A-2 (West 2021). As relevant here, that subsection regulates the timing of payments between subcontractors and subsubcontractors:

> If a subcontractor or subsubcontractor has performed in accordance with the provisions of its contract with the prime contractor or subcontractor and the work has been accepted by the owner, the

> owner's authorized approving agent, or the prime contractor, as applicable, and the parties have not otherwise agreed in writing, the prime contractor shall pay to its subcontractor and the subcontractor shall pay to its subsubcontractor within 10 calendar days of the receipt of each periodic payment, final payment or receipt of retainage monies, the full amount received for the work of the subcontractor or subsubcontractor based on the work completed or the services rendered under the applicable contract. . . .

N.J. Stat. Ann. § 2A:30A-2(b). Virtually no caselaw exists that elucidates the elements of a cause of action under this subsection or the Act writ large. *See Refine Tech., LLC v. MCC Dev., Inc.*, No. 17-5548, 2018 WL 3159874, at *5 (D.N.J. Feb. 21, 2018) ("Few courts have discussed the required elements of a [Prompt Payment Act] claim . . . ."). In the absence of precedent, the Court "look[s] first to the plain language of the statute, seeking further guidance only to the extent that the Legislature's intent cannot be derived from the words that it has chosen." *Id.* (quoting *Pizzullo v. N.J. Mfrs. Ins. Co.*, 952 A.2d 1077, 1084-85 (N.J. 2008)).

Based on the plain language of the Act, the Court gleans the following elements for a cause of action under subsection (b) of the Act:

(1) The subsubcontractor (Nan) has performed contractual work for the subcontractor (Wood);

(2) The contractual work has been approved by the owner (U.S. Air Force), the owner's agent, or the prime contractor (Lockheed Martin);

(3) The subcontractor and subsubcontractor have not otherwise agreed to terms of payment in writing;

(4) The subcontractor has not paid the subsubcontractor within ten calendar days of receipt of a proper invoice.

*See* N.J. Stat. Ann. § 2A:30A-2(b); *cf. Refine Tech., LLC*, 2018 WL 3159874, at *5 (finding similar elements under subsection (a) of the Act). Applying these elements, the Court finds that Nan's claim fails under the third element. A review of the contracts between Nan and Wood show that the parties agreed to their own payment schedule. (*See, e.g.*, Federal Construction Subcontract

11

Agreement § 7 ("Payment on [Nan's] invoices will be made forty five (45) days of [Wood's] receipt of properly submitted invoice for payment for amounts properly invoiced by Nan.").) Thus, Nan's claim for prompt payment fails.[5]

### IV. <u>CONCLUSION</u>

The Court grants in-part and denies in-part Wood's Motion. Specifically, it denies the Motion regarding Nan's breach-of-contract claim (Count I). It grants the Motion regarding Nan's breach-of-covenant (Count II), unjust enrichment (Count V), and New Jersey Prompt Payment Act (Count VI) claims. The Court will enter an order consistent with this Memorandum Opinion

/s/ Michael A. Shipp
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

---

[5] The Court recognizes, however, that this subsection (b) claim is relatively novel. Because the Court will grant Nan an opportunity to amend, Nan should plead, element-by-element, this cause of action with appropriate factual detail.